INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO–CLC, and its Local 1013, Plaintiffs-Appellees,

v.

INGRAM MFG. CO., Defendant-Appellant.

No. 82–1544
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1983.

Rehearing and Rehearing En Banc Denied Nov. 7, 1983.

---

Manitzas, Harris & Padgett, J. Joe Harris, San Antonio, Tex., for defendant-appellant.

Frank Herrera, Jr., San Antonio, Tex., for plaintiffs-appellees.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This case involves a suit under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce a labor arbitration award made under a collective bargaining agreement and an alleged strike settlement agreement. The International Union of Electrical Workers (the Union) is plaintiff-appellee and Ingram Mfg. Co. is defendant-appellant. The district court denied the Union's contention that the statute of limitations had run on Ingram's right to contest enforcement of the award, but on

the merits granted summary judgment for the Union enforcing the award. Ingram appeals, and we affirm.

The labor arbitration award in question was handed down on June 16, 1980. On September 19, 1980, the Union filed suit under Section 301, LMRA, 29 U.S.C. § 185, to enforce the award. On October 6, 1980, the defendant-employer filed its answer contending that the award was not enforceable on grounds that the arbitrator had exceeded his authority, resulting in an award which did not draw its essence from the collective bargaining agreement. The Union replied by moving to strike Ingram's affirmative defenses on the ground limitations had run. Both parties moved for summary judgment.

## LIMITATIONS

We turn our attention first to the issue of the applicable period of limitations. This is a straightforward case under Section 301 of a union seeking to enforce an arbitration award and the company refusing to abide by the award. The Union asserted in the district court that the limitations period provided for in either the Federal Arbitration Act, 9 U.S.C. § 12, or the Texas General Arbitration Act, Tex.Stat.Ann. art. 237(B), was applicable. Each of those statutes provides a ninety day limitation upon a suit to set aside an arbitration award. Ingram contended that either the six months limitation period of Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), or the general four year Texas Statute of Limitations, Tex.Stat.Ann. 5529, was applicable.

The district court found that limitations had not run on Ingram's affirmative defenses. The Union has appealed this decision. On May 12, 1983, we notified the parties that we were withholding final decision in this case because of two cases in which the United States Supreme Court had granted certiorari. Both of those cases involved suits which related in substantial measure to the limitations issues in the enforcement of arbitration awards. The decisions in those cases have now been rendered *sub nom. DelCostello v. Intl. Bhd. of Teamsters,* —— U.S. ——, 103 S.Ct. 2281,

76 L.Ed.2d 476 (1983). We find that the decisions of the Supreme Court are not controlling as to this case. *DelCostello* and its companion case involved suits brought by individual employees against the employer and the union challenging the outcome of grievance procedures and arbitration. The suits against the employer were for breach of contract under Section 301, LMRA. The fair representation suits against the union arose in the implied right to bring such suits under the National Labor Relations Act. *Vaca v. Sipes,* 386 U.S. 171, 177, 188, 87 S.Ct. 903, 910, 915–16, 17 L.Ed.2d 842 (1967).

In *DelCostello,* the Court held that in such cases, the typically short limitations period contained in arbitration acts in the various states should not apply. Instead, the six months limitation period for unfair labor practices under the National Labor Relations Act, Section 10(b), was the most analogous and useful limitations period. Holding that the six months period should be applied in suits brought by employees, the Court pointed out the importance of having a uniform statute of limitations applicable to both employer and union. Such cases involve claims against the employer in the nature of a breach of contract suit and against the union for lack of fair representation, which, if treated separately, would call for a different limitations period. Further, such suits might or might not involve arbitrations, making limitations in arbitration statutes only sometimes applicable.

For our purposes, the significant aspect of the Supreme Court's opinion in *DelCostello* is to be found in the recognition that it was distinguishing cases brought by employees attacking both the employer and the union for failing to deal with them fairly from the typical cases of a union or employer suing to vacate a labor arbitration award. In the latter kind of case, the Court accepted the general principle that the state limitations contained in state arbitration statutes should be the analogous limitations period made applicable in such lawsuits. *DelCostello, supra,* 103 S.Ct. at 2287, 2289. The Supreme Court decision, therefore, reinforces such holdings as *Chauffeurs, Team-*

*sters, Warehousemen, and Helpers, Local Union 135 v. Jefferson Trucking Co.,* 628 F.2d 1023 (7th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). *Jefferson Trucking* involved the factual pattern of the principal case. The union sued to enforce an award after the company had refused to obey the award and had not brought suit to set it aside. The Court applied the Uniform Arbitration Act, as adopted in Indiana. It found that the company, having failed to sue to vacate the award within ninety days as provided in that statute, could not later attack the award as invalid in the union's suit to enforce the award.

The reasoning of *Jefferson Trucking* does not control our case, however. Since *Del-Costello* does not control the limitations periods applicable to suits to vacate an arbitration award by the union or employer party to that award, we do look to the Texas General Arbitration Statute. The critical difficulty immediately arises because the Texas General Arbitration Statute has an uncommon provision that in terms makes the statute inapplicable to any collective bargaining agreement between an employer and a labor union. Tex.Rev. Civ.Stat.Ann. art. 224(a).

It has been regularly assumed that the limitations period in the Federal Arbitration Act does not apply to labor cases for the same reason. The statute in terms provides that it is not applicable to contracts involving employees in interstate commerce. Thus, this same obstacle to using the state ninety day limitations period of the Texas General Arbitration Act is created by the provision of the Texas law withdrawing the statute from applicability to labor disputes.

We have controlling law in this Circuit on this point. *Edwards v. Sea-Land Service, Inc.,* 678 F.2d 1276 (5th Cir.1982), involved the same factual situation as that in the *DelCostello* case. Employees brought actions against the employer and the union to set aside an arbitration award in favor of their former employer. The suit against the employer rested on a claim of breach of the agreement and against the union on a claim of a breach of its duty of fair repre-sentation. After careful consideration we found that the six months limitation of Section 10(b) of the National Labor Relations Act did not apply. *DelCostello* changes this conclusion because *Sea-Land Service* did involve an employee suit against employer and union. The limitations period in such suits is now six months as derived from Section 10(b) of NLRA.

Since in *Sea-Land* we rejected the six months NLRA limitations period, we went on to consider what statutory period would be applicable in a suit to set aside an arbitration award. Prior authority looked to arbitration statutes for the appropriate limitations period. We found that the three months limitation period of the Federal Arbitration Act did not apply because the Act specifically excludes contracts of employment involving any employees engaged in foreign or interstate commerce, 9 U.S.C. § 1.

We then turned our attention to the Texas statutes. The Texas General Arbitration Act is in large part an adoption of the Uniform Arbitration Act. However, as we pointed out earlier, the Texas Act added an amendment which provides that nothing in the Act applies to "[a]ny collective bargaining agreement between an employer and a labor union;" Tex.Rev.Civ.Stat.Ann. art. 224(a). We, therefore, concluded in *Sea-Land* that the Texas General Arbitration Statute's ninety day limitations period for setting aside an arbitration award was not a "comparable limitations statute" because of the stated policy of the state making the Act and its limitations period inapplicable to labor disputes and collective bargaining agreements. We rejected the applicability of the ninety day limitations period of the Texas General Arbitration Act, *Sea-Land, supra,* 678 F.2d at 1289.

■ *Sea-Land* concluded that the Texas catch-all statute of limitations, Tex.Rev.Civ. Stat.Ann. art. 5529, which provides for a four year limitations period applied. We follow this holding as the controlling precedent. Under the applicable limitations period, therefore, Ingram's affirmative defenses to the Union's suit to enforce the arbitra-

tion award are timely. In summary, we hold in the light of the prior developed caselaw and the Supreme Court's analysis in *DelCostello* that the six months limitations period under the Labor Management Relations Act and the three months period under the Federal Arbitration Act are not applicable. The most closely comparable state limitations period, therefore, is the one which applies. In the case of Texas it is not the ninety day limitations period under the Texas General Arbitration Act because by a restrictive amendment Texas withdraws the applicability of that entire statute from collective bargaining agreements and labor disputes growing out of them. Instead, in this case the general catch-all Texas limitations period of four years is applicable.

█ It follows that the district court was correct in finding the suit by the Union and the affirmative defenses filed by Ingram were not barred by limitations. We then proceed to the merits of the Union's suit to enforce the award and Ingram's affirmative defenses undertaking to establish that the award cannot legally be enforced.

## MERITS

On the merits, Arbitrator John Caraway found that there was a "tacit" agreement between the parties upon the settlement of the economic strike that all striking employees would be recalled regardless of the fact that some permanent replacements had been hired. He ordered that the grieving employees be reinstated and be awarded back pay from the date that they should have been reinstated under their seniority. One of the particular aspects of this case is that the new contract was made retroactive to the date of the expiration of the earlier contract, so that a collective bargaining agreement was in effect throughout the period in question including when the claimed strike settlement agreement was made. There was no hiatus.

Ingram makes two basic contentions. The first is that there was no agreement to reinstate all the strikers. Second, even if there was such an agreement, enforcement of the agreement was not subject to the arbitration process because it was not part of the collective bargaining agreement which provides for the arbitration of grievances. Thus, the company argues that the arbitrator's award enforcing such a strike settlement agreement did not "draw its essence from the collective bargaining agreement". *United Steel Workers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

█ It is well established, of course, that an employer may not discharge an economic striker. *NLRB v. Intl. Van Lines*, 409 U.S. 48, 52, 93 S.Ct. 74, 77, 34 L.Ed.2d 201 (1972). Since early in the history of the National Labor Relations Act, however, it has consistently been held that an economic striker may be permanently replaced by the employer. *NLRB v. Mackay Radio & Tel. Co.*, 304 U.S. 333, 345, 58 S.Ct. 904, 910, 82 L.Ed. 1381 (1938). The company asserts that a number of permanent replacements were hired during the strike. Yet, at the end of economic strikes it is fairly common to make agreements to return all economic strikers to work in spite of the fact that there have been replacements. Absent such an agreement, those employees who were permanently replaced during the strike have no reinstatement rights. If they are reinstated by the company, they cannot claim seniority and other rights under the contract but are treated as new employees. *See* Arbitrator Volz' decision in *Indiana Telephone Co.*, 73–2, CCH Lab.Arb. ¶ 8502 (1973).

█ A critical issue in this case, then, is whether an agreement to reinstate all the strikers was made. This contention of the Union is denied by the company. The issue is a factual one. Was there an agreement between the parties under which the company promised to reinstate all strikers? Absent a showing of fraud or bias or prejudice, or reliance upon evidence which is so flimsy that fraud, bias, or prejudice can be inferred, the courts have no power to review the findings of fact of an arbitrator. There is no review on the record in the usual sense of the review of administrative decisions. The parties have chosen the arbi-

trator as the ultimate factfinder. In *Amalgamated Meat Cutters ánd Butcher Workmen of North America, District Local No. 540 v. Neuhoff Bros. Packers, Inc.,* 481 F.2d 817, 819 (5th Cir.1973), we said, "The scope of judicial review of an arbitrator's award is extremely narrow: In order to promote the federal policy favoring settling of labor disputes by arbitration *the factual* and the legal *accuracy* of arbitrators' findings will not be reviewed." (Emphasis added). *See also International U. of Electrical, Radio & Machine Workers v. Markle Mfg. Co.,* 582 F.2d 9, 10 (5th Cir.1978).

■ Arbitrator Caraway in this case found that the Union had in writing proposed as part of the strike settlement that all the striking employees be returned to their jobs regardless of permanent replacement. He found further that the company orally agreed to this and immediately began to act in accordance with it. It was only after a few days that the company refused to follow the agreement. Not only did this experienced labor arbitrator find on these facts there was such an agreement between the parties, this exact same issue involving this same episode with the same parties was submitted to another experienced arbitrator, Ralph Barnhart, and he also found that such an agreement had been made. *Ingram Mfg. Co.,* 80–2, CCH Lab.Arb. ¶ 8490 (1980). While the Barnhart decision obviously does not control, it reveals again the reasonableness of the finding of the existence of the agreement by Arbitrator Caraway in this case. Under our limited power of review, we cannot upset Arbitrator Caraway's conclusion that such an agreement existed.

Ingram relies mainly upon a step-by-step contention which starts with the proposition that the agreement for reinstatement of employees was separate from the collective bargaining agreement. In turn, since the grievance procedure ending in arbitration is found in the collective bargaining agreement, there is no authority under which the arbitrator can act in applying the strike settlement agreement. The arbitrator, therefore, departed from the limitation in the collective bargaining agreement that requires him to confine his jurisdiction to the provisions of "this agreement" (the collective bargaining agreement). The final step, then, in this step-by-step analysis is that his award did not "draw its essence from the collective bargaining agreement." *Enterprise Wheel & Car, supra,* 363 U.S. at 597, 80 S.Ct. at 1361.

We find this contention to be unrealistic and unacceptable in the well-established context of labor-management grievance procedures and the arbitration of labor disputes. The contention of Ingram is that an arbitrator exceeds his or her authority when the decision is made that a strike settlement agreement concluded at the same time as a new collective bargaining agreement is part of the collective bargaining agreement for purposes of the grievance procedure. The many reported arbitration cases, however, show that only if the parties in terms withdraw provisions of the strike settlement from the grievance procedure and arbitration is such a separation of the two agreements achieved. The published arbitration reports are full of cases in which, just as in this case, the arbitrator has treated strike settlement agreements as part of the collective bargaining agreement for purposes of the grievance procedure and arbitration, absent such a specific withdrawal provision.

■ But it is not for this Court to decide whether the collective bargaining agreement and the simultaneous strike settlement are to be treated together. Our powers of review are far more restrictive. It is established that the power to interpret the collective agreement between the parties has been given to the arbitrator and is not for the court to second guess. The United States Supreme Court made this clear in the famous Trilogy of cases decided all the same day which laid the foundation for the modern law of judicial review of labor arbitration. *United Steel Workers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steel Workers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steel Workers of America v. Enterprise Wheel & Car*

Co., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In *Enterprise Wheel & Car,* the Supreme Court said:

[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his. (363 U.S. at 599, 80 S.Ct. at 1362).

As we have said elsewhere "if the subject matter of the dispute is arguably arbitrable (resolving all doubts in favor of coverage), then it is for the arbitrator to decide whether or not the dispute may be arbitrated." *Alabama Power Co. v. Local Union No. 391,* 612 F.2d 960, 963 (5th Cir.1980).

We get further guidance on this issue from the *Warrior & Gulf* case. In that case the Supreme Court told us that the role of the arbitrator is broader than applying the precise wording of the contract. The arbitrator is also chosen to exercise "his knowledge of the common law of the shop". 363 U.S. at 582, 80 S.Ct. at 1352. It is difficult to deny the proposition that a strike settlement agreement concluded simultaneously with a new collective bargaining contract is part of the common law of the shop.

Finally, we are told in *Warrior & Gulf* that "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute. Doubts should be resolved in favor of coverage." 363 U.S. at 582, 80 S.Ct. at 1353. In *International Assn. of Heat & Frost Insulators & Asbestos Workers, Local 66 v. Leona Lee Corp.,* 489 F.2d 1032, 1033 (5th Cir.), cert. denied, 419 U.S. 829, 95 S.Ct. 51, 42 L.Ed.2d 54 (1974), we said a court: "cannot review the merits of the award, even in deciding the question of arbitrability, nor can the court attempt to interpret the collective bargaining agreement." *See also in general, Local No. 370, Bakery, Confectionary & Tobacco Workers Intl. U. v. Cotton Bros. Baking Co.,* 672 F.2d 562, 564 (5th

Cir.1982); *Waverly Mineral Products Co. v. United Steel Workers of America,* 633 F.2d 682, 684 (5th Cir.1980); *Safeway Stores, Inc. v. American Bakery & Confectionary Workers Intl. U. Local 111,* 390 F.2d 79, 81 (5th Cir.1968).

■ With our limited function of review, we cannot conclude Arbitrator Caraway moved outside the provisions of the contract. There is much support in industrial relations for his interpretation that a strike settlement agreement is related to, and insofar as is necessary, is a part of the collective bargaining agreement between the parties. In turn, the grievance procedure is applicable, unless the parties by agreement have withdrawn it from the particular kind of case.

We are in full agreement with the district court that neither the suit to enforce the arbitration award nor the affirmative defenses opposing enforcement are barred by limitations. We are also in agreement with the district court that on the merits the award should be enforced in full.

A final matter remains. The Union asserts that the district court erred in failing to award attorney's fees for its costs in pursuing this suit. It takes the position that, at a minimum, the case should be remanded to the district court for a specific finding as to whether or not such fees should be awarded. We have held that there can be recovery of attorney's fees in Section 301 causes of action. *International Assn. of Machinists and Aerospace Workers v. Texas Steel Co.,* 538 F.2d 1116, 1121 (5th Cir.1976). However, such fees are awardable only when it is determined that a party has without justification refused to abide by the award of the arbitrator. *International U. of Dist. 50, United Mine Workers v. Bowman Transportation, Inc.,* 421 F.2d 934, 935 (5th Cir.1970).

■ No specific finding by the district court is necessary in this case to establish that Ingram had reasonable ground to advance the position that the arbitration award was not binding. There was a genuine dispute as to the scope and interpreta-

tion of the strike settlement agreement between the parties concerning the reinstatement of striking employees. The company's contentions were not frivolous and unjustified. This is enough to sustain the district court in deciding in its discretion not to award attorney's fees. *See Dallas Typographical U. No. 173 v. A.H. Belo Corp.*, 372 F.2d 577, 583 (5th Cir.1967). We do not upset the district court's exercise of discretion in this matter.

It follows that the order of the district court should be affirmed in full.

AFFIRMED.