UNITED STATES of America, Plaintiff,

v.

MISSISSIPPI VOCATIONAL REHABILITATION FOR the BLIND and the State of Mississippi, Defendants.

MISSISSIPPI VOCATIONAL REHABILITATION FOR BLIND,
Counterclaimant,

v.

Roy S. ESTESS, in his official capacity as Director of the John C. Stennis Space Center of the National Aeronautics and Space Administration; Admiral Richard H. Truly, in his official capacity as the Administrator of the National Aeronautics and Space Administration; and the National Aeronautics and Space Administration, Counterdefendants.

Civ. A. No. S90–0494(R).

United States District Court,
S.D. Mississippi, S.D.

May 22, 1992.

Gretchen E. Jacobs, Leslie Southwick, Dept. of Justice, Civ. Div., Washington, D.C., Crockett Lindsey, Asst. U.S. Atty., Biloxi, Miss., for plaintiff and counterdefendants.

T. Hunt Cole, Jr., Sp. Asst. Atty. Gen., Mississippi Attorney General's Office, Jackson, Miss., for defendants and counterclaimant.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This cause is before this Court on Motion of the defendant/counterclaimant Mississippi Vocational Rehabilitation for the Blind (hereinafter "MVRB"), for Summary Judgment on its counterclaim and to dismiss plaintiff's complaint, with exhibits, and on cross-motion of the plaintiff, the United States of America (hereinafter "USA") and counterdefendants Roy S. Es-

tess, Admiral Richard H. Truly, and the National Aeronautics and Space Administration (hereinafter collectively referred to as "NASA") for summary judgment.

## I. STATUTORY AND REGULATORY FRAMEWORK

At issue in this action is the defendant-counterplaintiff MVRB's alleged entitlement to a blind vending permit pursuant to the Randolph–Sheppard Act (hereinafter the "Act"), 20 U.S.C. Section 107, *et seq.*, to operate approximately 45 scattered vending machines at the Stennis Space Center in Hancock County, Mississippi.

The Randolph–Sheppard Act establishes a cooperative federal/state vocational rehabilitation program designed to promote economic opportunity and self-sufficiency in blind persons through their operation of vending facilities on federal property. 20 U.S.C. Section 107, *et seq.* (as amended).[1] Under the Act, qualified blind vendors are to receive "permits" to operate vending facilities and contracts to operate cafeterias on eligible federal properties.

Administration of the Randolph–Sheppard program is divided between the Secretary of the Department of Education ("DOE") and state licensing agencies (hereinafter "SLAs").[2] As a general matter, DOE provides overall administrative oversight for the program by promulgating regulations implementing the Act, convening arbitration panels for the resolution of Act-related disputes, conducting annual surveys of vending opportunities for blind persons on federal properties, and by desig-

nating SLAs in each state. 20 U.S.C. Sections 107a(a), 107d–2; 34 C.F.R. Sections 395.2–395.5. SLAs, for their part, administer the Randolph–Sheppard program in their respective states by licensing qualified blind vendors and providing other program assistance. Such assistance includes training programs for blind vendors and selection, subject to the Act and program regulations, of appropriate vending locations on federal property. *See, e.g.,* 20 U.S.C. Section 107a(b)-(c); 34 C.F.R. Sections 395.7–395.17.

Not all federal properties are included within the Randolph–Sheppard program. Rather, site selection for, and placement of blind vending facilities and cafeterias on federal property is governed by an elaborate statutory and regulatory framework defining federal properties subject to the Act. *See generally* 20 U.S.C. Sections 107(a), 107a(d); 34 C.F.R. Sections 395.30–395.31, 395.33. Central to this dispute are the criteria governing the placement of blind vendor-operated automatic vending machines on federal properties already in existence as of January 1975.[3]

For such federal properties, the Act establishes a "priority" for "one or more" Randolph–Sheppard vending facilities on all federal properties. Regulations promulgated by the Secretary of Education to implement this priority provision further provide that

> each department, agency, or instrumentality of the United States in control of the maintenance, operation, and protection of Federal property shall take all

---

**1.** Originally enacted in 1936, the Act has twice been substantially revised to reflect modern vending technologies, enhance federal agency compliance by establishing a statutory priority for blind vending facilities over other competing vending interests, and provide for direct program oversight and administration by the Department of Education and state licensing agencies. *See* Randolph–Sheppard Act of 1936, Pub.L. No. 732, 49 Stat. 1559 (1936); *See* Vocational Rehabilitation Act of 1954, Pub.L. No. 83–565, c. 655, Sec. 4, 68 Stat. 662 (1954) [hereinafter "1954 Amendments"]; *See* Pub.L. No. 93–516, 88 Stat. 1622 (1974) [hereinafter "1974 Amendments"]. Unless otherwise noted, statutory citations in this memorandum refer to the current version of the Randolph–Sheppard Act.

**2.** Section 107(a) of the Act further designates the Rehabilitation Services Administration, an agency within DOE, as the "principal agency" responsible for the Act's implementation.

**3.** Not at issue in this litigation are the criteria governing the placement of blind vendor facilities on federal properties acquired, rented, leased, or substantially renovated, after January 2, 1975. *See* 20 U.S.C. Sec. 107a(d); 34 C.F.R. Sec. 395.31. Also outside the scope of this litigation are the site selection procedures governing federal cafeterias operated by blind vendors. *See* 20 U.S.C. Sec. 107d–3(e); 34 C.F.R. Sec. 395.33.

steps necessary to assure that, whenever feasible, in light of appropriate space and potential patronage, one or more vending facilities for operation by blind licensees shall be located on federal property Provided that the location or operation of such facility or facilities would not adversely affect the interests of the United States. Blind persons licensed by [SLAs] shall be given priority in the operation of vending facilities on any Federal property.

34 C.F.R. Section 395.30(a) (1989) (emphasis in original). "Adverse effect" limitations on the location or operation of blind vending facilities must be approved by the Secretary and published in the Federal Register. *Id.* at Section 395.30(b); *see also* 20 U.S.C. Section 107(b)(2).[4]

The application for, and awarding of, Randolph–Sheppard permits proceeds according to the following process. First, SLAs, on behalf of licensed blind vendors, must submit a formal written application describing the site for which the permit is requested for the "review and approval of the head of the Federal property managing department, agency, or instrumentality." 34 C.F.R. Sections 395.34–395.35. Once issued, blind vending permits operate for an indefinite term "subject to suspension or termination on the basis of [lack of] compliance with agreed upon terms." *Id.* at Section 395.35(b).

The Act establishes dual procedures for the resolution of disputes concerning the operation or administration of the blind vending program depending on the identity of the parties to the dispute. An aggrieved blind vendor may submit a request for an evidentiary hearing conducted by their SLA and, if still dissatisfied after such hearing, may file an arbitration request with the Secretary of the Department of Education

(hereinafter the "Secretary") 20 U.S.C. Sections 107d–1(a), 107d–2(b)(1).

Disputes between SLAs and federal entities are governed by somewhat different arbitration procedures. *See Id.* at Sections 107d–1(b), 107d–2(b)(2). SLAs asserting non-compliance with the Act or its regulations by federal entities may file a complaint with the Secretary who "shall convene" *ad hoc* arbitration panel to adjudicate the dispute. *Id.* at Section 107d–1(b).[5] Arbitration panels so convened are authorized to conduct notices hearings and render decisions "which shall be subject to appeal and review as ... final agency action[s] for purposes of Chapter 7 of ... Title 5 [the Administrative Procedure Act]." *Id.* at Section 107d–2(a); *See also* Section 107d–1(b) (arbitration decisions of panels convened under Section 107d–2 "final and binding ... except as otherwise provided in this chapter"). Finally, with respect to enforcement and remedies, panels convened to arbitrate disputes between federal entities and SLAs have no affirmative remedial authority. Rather, it is the federal entities found in violation of the Act, not the arbitration panel charged with "caus[ing] such acts or practices to be terminated promptly and ... tak[ing] such other action as may be necessary to carry out the decision of the panel." *Id.* at Section 107d–2(b)(2).

## II. FINDING OF UNCONTROVERTED FACTS

NASA operates a large field installation known as the John C. Stennis Space Center (hereinafter "SSC") in Hancock County, Mississippi. Although SSC serves primarily as NASA's test center for large rocket propulsion systems, it also houses various other related federal agencies and projects. *In re Mississippi Vocational Rehabilita-*

---

**4.** NASA did not rely on this "adverse interest" exemption during the arbitration proceedings, and further does not, in this litigation, invoke such exemption with respect to its denial of MVRB's Randolph–Sheppard permit applications.

**5.** Arbitration panels convened by the Secretary to resolve Act-related disputes between SLAs and federal agencies consist of three members—

one member designated by the SLA, one member designated by the federal agency, and a panel chairman jointly designated by the two panel members. The panel chairman must not be employed by the federal agency or instrumentality controlling the federal property on which the disputed vending facility is located. *See* 20 U.S.C. Sec. 107d–2(b)(2).

*tion for the Blind and National Aeronautics and Space Administration,* No. R–S/88–7, slip op. at 1 (May 22, 1990) (*"Arbitration Decision"*). SSC consists of some 180 buildings scattered over approximately 21 square miles of federal property (excluding acreage for a non-operational buffer zone). *Id.*

SSC has a long history of supporting the Randolph–Sheppard program. Since 1966, one or more blind vendors have continuously operated vending facilities there. *See* Declaration of Jon B. Roth (hereinafter "Roth Declaration")[6] of March 4, 1992, paragraph 4; *see also Arbitration Decision* at 2.[7] Two blind vendors currently operate vending facilities/snack bars in the most populated building within the central administrative complex. A third blind vendor also provides cafeteria and vending services at the Mississippi Army Ammunition Plant at SSC. *Id.* at paragraph 4.

The disputed vending facilities in this action are 45 vending machines located in approximately 20 buildings scattered around SSC. In 1981, the NASA Exchange (hereinafter the "Exchange")[8] awarded a five-year umbrella concession agreement for the operation of these scattered vending machines. Included in this agreement was a provision requiring the concessionaire to remit a certain percentage of its vending income to the exchange. *See Arbitration Decision* at 2; Roth Declaration paragraph 6.

In January 1987, at the end of this first concession agreement, the NASA Exchange again issued a Request for Proposal (hereinafter "RFP") soliciting bids for a

follow-on five-year concession agreement for the operation of vending machines at the same scattered locations covered by the previous agreement. *Arbitration Decision* at 3; Roth Declaration paragraph 7. Though MVRB initially expressed an interest in making a competitive bid in response to the NASA Exchange's RFP, MVRB subsequently informed NASA in late February 1987 that it considered the approximately 45 vending machines listed in the RFP as "a potential Randolph–Sheppard facility" and it intended to seek a blind vending permit to operate them. Roth Declaration Paragraphs 8–9.

In discussions with MVRB officials throughout the spring of 1987, NASA attempted to resolve their dispute regarding the 45 scattered vending machines. *Arbitration Decision* at 4; Roth Declaration paragraph 10. Indeed, on more than one occasion, NASA delayed the contract award deadline beyond the original March 1987 date to allow MVRB additional time either to respond to the RFP or to invoke the Act's dispute resolution measures. *Id.* at Paragraphs 10–11. MVRB was fully aware of NASA's revised final contract award deadline of June 1, 1987, but remained silent. *Id.* at Paragraphs 11–12. One June 4, 1987, having received neither a permit application nor a bid in response to the RFP from MVRB, the Exchange awarded a five-year concession contract for operation of the disputed vending machines to Food Vending Services, Inc. *Arbitration Decision* at 4; Roth Declaration paragraph 12. This concession contract with Food

---

**6.** The Court notes that MVRB objects to said Roth Declaration/"Affidavit" and asks that it be stricken or disregarded. The Court has reviewed said declaration and it will not strike it, although, it is in one manner informative but in another manner cumulative.

**7.** The arbitration panel did commend NASA for being "most cooperative" in placing blind vendors at the Stennis Space Center. *Arbitration Decision* at 8.

**8.** The NASA Exchange is a non-appropriated fund instrumentality similar in operation to a military post-exchange. The Exchange's authority to enter into concessionaire agreements for vending services is derived from Section

203(c)(3) of the National Aeronautics and Space Act of 1958, 42 U.S.C. Sec. 2473 (as amended), which authorizes NASA "to provide by contract or otherwise for cafeterias and other necessary facilities for the welfare of employees of the Administration and its installations[.]" *See also* Roth Declaration paragraph 1. The Exchange has traditionally used the proceeds from scattered vending facilities to provide recreational and welfare services to its employees. For example, the Exchange is currently making a substantial financial contribution, funded partly from vending income, to a "wellness" center for all SCC employees. *Id.* at Paragraphs 2, 5.

Vending Services expires in July 1992. Roth Declaration paragraph 12.

At no time prior to NASA's awarding of the concession contract in June 1987 did MVRB formally apply to NASA officials for a Randolph–Sheppard permit to operate the disputed vending machines encompassed by the RFP. *Id.* at paragraph 13; *see also Arbitration Decision* at 4. Not until March 4, 1988—nine months after the contract award—did MVRB first submit an application for a Randolph–Sheppard permit to operate the 45 scattered vending machines then and now being operated by Food Vending Services. *Id.* NASA denied MVRB's application for a blind vending permit; shortly thereafter, MVRB filed a request for arbitration with the Secretary of Education. *Arbitration Decision* at 4.

The Secretary convened a three-member *ad hoc* arbitration panel pursuant to 20 U.S.C. Section 107d-2. In May 1990, the arbitration panel ruled, in a 2–1 decision, that NASA had improperly denied MVRB a permit to operate the disputed vending machines and ordered NASA, upon reapplication by MVRB for a blind vending permit, to "terminate the existing concessionaire contract [with Food Vending Services] in a timely fashion and grant MVRB the requested permit." *Arbitration Decision* at 20; *see also* 56 Fed.Reg. 40,880 (Aug. 16, 1991) (Department of Education notice summarizing arbitration panel decision). The panel majority concluded that the disputed vending machines constituted "feasible" vending locations within the meaning of the Act for which MVRB should have received a blind vending permit based primarily on NASA's election to combine the scattered vending locations into one umbrella concession agreement. *Arbitration Decision* at 9–12. In dissent, one panel member challenged the majority's holding that widely scattered vending locations could be combined and treated as a "single" vending facility for purposes of awarding Randolph–Sheppard permits. *See* Dissenting Opinion of James R. Fulton (June 28, 1990).

Shortly thereafter, MVRB again applied for a blind vending permit which NASA denied on the grounds that (a) the vending machines at issue were already being operated under contract by Food Vending Services, and (b) NASA was contemplating judicial challenge to the panel's decision and award. *See* Correspondence from Roy S. Estess to Joe F. Carballo dated September 7, 1990 (attached as Exhibit C to MVRB's Counterclaim for Mandatory Relief); *see also* Roth Declaration paragraph 14.

### III. RELIEF SOUGHT

On October 1, 1990, the USA filed the instant suit on behalf of NASA seeking declarations (1) that the arbitration panel had erroneously determined that the disputed scattered vending locations qualified as a "feasible" vending location within the meaning of the Randolph–Sheppard Act, and that (2) the panel had exceeded the scope of its statutory authority by ordering NASA to terminate an existing concession contract in favor of a Randolph–Sheppard permit. *See* Complaint Paragraphs VI–VIII.

The Defendant MVRB answered NASA's complaint and filed a Counterclaim for Mandatory Order naming as defendants NASA and two NASA officials, Roy Estess (Director of the Stennis Space Center) and Admiral Richard Truly (Administrator of NASA) [hereinafter collectively referred to as the "NASA Defendants"] seeking two forms of relief: (1) mandatory relief "to compel [NASA] to abide by" the arbitration award, and (2) unspecified "prospective monetary relief and damages from [counter]defendant NASA for lost income opportunities for blind vendors from the date of NASA's wilful refusal to comply with the arbitration award[.]" Counterclaim paragraph 1. MVRB, in its counterclaim, also proposes bifurcated liability and damages proceedings—a "phase one" proceeding concerning MVRB's claims for mandatory relief, and a "phase two" addressing MVRB's claims for monetary relief and attorney's fees. *Id.* at paragraph 33; *see also* MVRB Mem. at 17–19.

On February 4, 1992, MVRB filed a combined motion for summary judgment on its

counterclaim and motion to dismiss the United States' complaint.

The MVRB asks this Court to dismiss NASA's complaint pursuant to Rules 12(b)(1) and (b)(6), and also asks that summary judgment be entered in favor of MVRB on its counterclaim against NASA because (1) the express language of the Randolph–Sheppard Act, 20 U.S.C. Section 107, *et seq.*, does not provide jurisdiction for a losing federal agency to appeal to federal court an arbitration award rendered adverse to it under the Act; (2) MVRB is entitled to a summary confirmation of the award and an order enforcing same, because the Act specifically provides that such awards are final, binding, and must be followed by federal agency heads; and (3) in the alternative, and to the extent that even limited judicial review of the arbitration award is permissible under the Act, MVRB submits that summary judgment in its favor would also be warranted because the Court must defer to arbitration decisions which are not in manifest disregard of law or an egregious abuse of discretion.

The USA and NASA challenge in their cross-motion for summary judgment on MVRB's counterclaim (1) the constitutionality of the arbitration provisions of the Act, 20 U.S.C. Sections 107d–1, 107d–2, and (2) the timeliness of MVRB's permit application, and (3) the remedial authority of the NASA–MVRB arbitration panel to order the termination of an existing concession contract in favor of a blind vending permit for MVRB.

## IV. CONCLUSIONS OF LAW

### A. *Issue of Jurisdiction before this Court*

■ The complaint filed in this cause asserts jurisdiction pursuant to the Administrative Procedures Act, 5 U.S.C. Sections 701–706, the Randolph–Sheppard Act, U.S.C. Sections 107d–2(2), *et seq.*, and 28 U.S.C. Section 1345. As previously stated, MVRB contends that this action should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) because the Randolph–Sheppard Act does not grant federal court jurisdiction for any appeal of an

arbitration award by a losing federal entity. The USA concedes that this Court is without jurisdiction based upon the unconstitutionality of the Act's arbitration and judicial review provisions, as set forth herein, but submits that, however, lack of jurisdiction over the complaint does not preclude this Court from adjudicating the parties' dispute. Specifically, the USA contends that dismissal of a Complaint does not operate to defeat jurisdiction over counterclaims where, as here, those counterclaims are supported by independent federal jurisdictional grounds. *See, e.g., Hamilton v. Firestone Tire and Rubber Co.,* 679 F.2d 143, 146 & n. 3 (9th Cir.1982); *Rare Earth, Inc. v. Hoorelbeke,* 401 F.Supp. 26, 34–35 (S.D.N.Y.1975).

Rule 12(b)(6) provides in pertinent part the following:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Further, Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part that summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Court certainly has before it for consideration matters outside the pleadings, and there is sufficient material in the record to establish there remains no genuine issue of material fact.

Further, the USA contends that an alternate means of adjudication of this action the Court could exercise its discretionary judicial powers under Rule 1 of the Federal Rules of Civil Procedure and realign the parties to MVRB's counterclaims. Yet, as

noted, it would not serve the interests of judicial economy and efficiency if this Court dismissed MVRB's counterclaims for want of jurisdiction and thus compelled them to refile this action. Accordingly, this Court finds that there is authority to support its exercise of jurisdiction over this matter since MVRB's counterclaims are properly before the Court.

MVRB submits that the Act expressly provides that the awards of arbitration panels are to be "final" and "binding" except as otherwise provided for in the Act, and cites the provision that "the decision of such [arbitration] panel shall be final and binding on the parties except as otherwise provided in this chapter." 20 U.S.C. Section 107d–1(b).

MVRB cites as the only exception appeals of arbitration decisions by aggrieved blind vendors and state licensing agencies; MVRB submits that this exception does not include an avenue of appeal for a federal agency.

MVRB cites 20 U.S.C. Section 107–2(a) which provides in pertinent part, that a Randolph–Sheppard arbitration panel shall:

conduct a hearing, and render its decision which shall be subject to appeal and review as a final agency action for purposes of Chapter 7 of ... Title 5.

Chapter 7 of Title 5 is the Administrative Procedures Act which MVRB contends is incorporated into the Act. The Administrative Procedures Act provides:

a person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review thereof.

5 U.S.C. Section 702.

Furthermore, the definition of "person" within the Administrative Procedures Act excludes federal agencies. It provides, pertinent part:

an individual, partnership, corporation, association, or public or private organization other than an agency.

5 U.S.C. Section 701(b)(2), incorporating 5 U.S.C. Section 551(2).

The term "agency" is defined as "each authority of the government of the United States." 5 U.S.C. Section 701(b)(1). As such, the MVRB contends that the arbitration decision at issue is final and binding on the USA, and this Court must "confine [its] own jurisdiction to the precise limits which the statute has defined." *Finley v. United States*, 490 U.S. 545, 553, 109 S.Ct. 2003, 2009, 104 L.Ed.2d 593 (1989).

**B.** *Issue of MVRB's Entitlement to Enforcement of the Arbitration Award*

MVRB submits that pursuant to the express provisions of 20 U.S.C. Section 107d–1(b) of the Randolph–Sheppard Act, the decision of an arbitration panel convened by the Secretary of Education "shall be final and binding on the parties except as otherwise provided in the Act"; and, as is also previously stated, no provision of the Act provides any exception in favor of federal agencies to the foregoing statutory requirement that such arbitration decisions are to be "final" and "binding." Equally, MVRB contends that no exception exists so that NASA may refuse to comply with or obtain review of such arbitration decision.

The Court is of the opinion that the express language of the statute leaves the arbitration decision in issue as final and binding since the state agency has not been adversely affected or aggrieved by the Secretary of Education's action. See *Georgia Department of Human Resources v. Nash*, 915 F.2d 1482, 1494 (11th Cir.1990). Furthermore, the federal officials are to terminate promptly the violations found by the panel. *Id.* at 1492.

Furthermore, if the abuse-of-discretion standard set out in section 706 of the Administrative Procedures Act, 5 U.S.C. Section 706 is applicable, the conclusions and award of the panel are not demonstrably contrary to law or arbitrary. Judicial review of arbitration awards is de novo in nature based upon the general national policy favoring arbitration of disputes. See *Legion Ins. Co. v. Insurance General Agency, Inc.*, 822 F.2d 541, 543 (5th Cir.1987). The Court must defer to

the reasonable determination of the arbitrator. *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2799, 115 L.Ed.2d 972 (1991). Moreover, the findings of fact of an arbitrator are subject only to the most limited review. *See Int'l Union of Electrical, etc. v. Ingram Mfg., Co.*, 715 F.2d 886, 890 (5th Cir.1983), *cert. denied,* 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 184 (1984).

The arbitration panel decision in issue is not contrary to law or in "manifest disregard" of the Act. *Antwine v. Prudential–Bache Secur. Inc.*, 735 F.Supp. 1331, 1332 (S.D.Miss.1989), *affirmed,* 899 F.2d 410 (5th Cir.1990).

■ In determining that MVRB is entitled to priority and a permit for the operation of the vending machines by its blind licensees at NASA's Hancock County property, the arbitrator, Panel Chairman Paul Barron, carefully considered the statutory language, the implementing Regulations, and the Act's central purpose of providing economic opportunities for blind vendors. *See Arbitration Decision* at pp. 5–14. The arbitrator specifically observed that neither of the two statutory limitations on licensing agency priority had been asserted by NASA; specifically, it was not asserted that: (1) the operation of the vending facility would "adversely affect the interests of the United States," or (2) the vending facility is part of a larger NASA concession which provides atypical goods and services. *Id.* at pp. 8–9. The panel found as a fact that the 45 scattered vending machines constituted a "feasible" vending facility at the Hancock County property for Randolph–Sheppard purposes. *Id.* at pp. 9–14. It further rejected NASA's argument that the separate "income sharing" exception of the Act should be engrafted into the blind vendor priority provisions; the panel determined that NASA's argument was inconsistent with the language and overriding purpose of the statutes. *Id.* at pp. 14–19.

■ The Court is of the opinion that the motion of the defendant/counterclaimant MVRB for summary judgment is well taken and should be granted inasmuch as it seeks that this Court hold the arbitration decision as final and binding regarding MVRB's priority and entitlement to a permit under the Randolph–Sheppard Act. However, although the panel has the authority under the Act to determine if there has been a violation of the Act, the panel does not have the authority to order the federal entity to take any remedial action. *Georgia Dept. of Human Resources v. Nash*, 915 F.2d at 1492. Accordingly, this Court will not confirm the panel's decision that NASA terminate the existing concession agreements in issue but *directs* NASA to remedy the violations.

■ Furthermore, this Court will not grant MVRB a "second phase" of proceedings whereby this Court would determine MVRB's prayer for unspecified "prospective monetary relief and damages from [counter] defendant NASA for lost income opportunities for blind vendors from the date of the NASA's wilful refusal to comply with the arbitration award[.]" Counterclaim Paragraph 1, 33; *see also* MVRB Mem. at 17–19.

The Court denies this relief because the USA/NASA had legitimate or reasonable disputes based upon interpretative disagreement with the Act; and, more importantly, because MVRB failed to make a proper and timely application for a Randolph–Sheppard blind vending permit to operate the scattered vending machines. As previously set forth, MVRB was aware of the June 1987 contract award deadline which had been delayed from March of 1987 to allow MVRB additional time to either respond to the "Request for Proposal" or to invoke the Act's dispute resolution procedures; MVRB did not respond prior to NASA's awarding of the concession agreements and did not formally apply to NASA officials for a Randolph–Sheppard permit until March 4, 1988, which was nine months after the contract award.

### C. *Issue of Constitutionality of Act's Arbitration Scheme*

MVRB initially attacks NASA's assertion of constitutional and timeliness arguments

as having been waived because they were not presented as "affirmative defenses" pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, when NASA answered MVRB's counterclaim. *See* Response of Mississippi Vocational Rehabilitation for the Blind in Opposition to Counterdefendants' Cross–Motion for Summary Judgment (hereinafter "MVRB Response") at 4–5, 16. This argument is without merit.

■ NASA's constitutional and timeliness arguments do not present matters in the nature of an affirmative defense. Neither of these defenses is listed as one of Rule 8(c)'s nineteen enumerated affirmative defenses—such as assumption of risk, estoppel, duress, or statute of limitations. Nor do these defenses fall within Rule 8(c)'s catchall statement that any "matter constituting an avoidance or affirmative defense" must be affirmatively pled. Rather than being in the nature of avoidance, NASA's constitutional and timeliness arguments challenge the sufficiency of MVRB's purported prima facie case of entitlement to a Randolph–Sheppard Act blind vending permit. *See* 2A James Wm. Moore, et al., *Moore's Federal Practice* Section 8.27[3] (2d ed. 1991) (analysis of plaintiff's prima facie case necessary to determine applicability of Rule 8(c)). NASA thus not only properly pled these two matters as general defenses, *inter alia*, in its Answer to MVRB's counterclaims, but also is not precluded by Rule 8(c) from asserting these arguments in support of its cross-motion for summary judgment.

Furthermore, even assuming that NASA's constitutional and timeliness arguments present affirmative defenses, these arguments are still properly before this Court. While MVRB suggests that failure to comply with Rule 8(c) acts as an invariable waiver, federal caselaw recognizes the role of judicial discretion in waiver determinations. " 'Where the matter is raised in the trial court in a manner that does not result in unfair surprise, ... technical failure to comply precisely with Rule 8(c) is not fatal.' " *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir.1986) (quoting *Allied Chemical Corp. v. Mackay*, 695 F.2d 854,

855–56 (5th Cir.1983); *see also Bull's Corner Restaurant, Inc. v. Director of Federal Emergency Management Agency*, 759 F.2d 500, 512 (5th Cir.1985); *Polles v. Federal Deposit Ins. Corp.*, 749 F.Supp. 136, 138–39 (N.D.Miss.1990).

MVRB has suffered no unfair or prejudicial surprise as a result of NASA's assertion of its constitutional and timeliness arguments at the summary judgment stage of these proceedings, and courts have even gone so far as to not preclude a first-time review at the appellate level of an Appointments Clause challenge to a statute which was not raised at the district court level. *See Freytag v. Commissioner*, —— U.S. ——, 111 S.Ct. 2631, 2638–39, 115 L.Ed.2d 764 (1991).

NASA and the USA contend that even if this Court were to follow other district courts and reject MVRB's argument that the panel's decision is, by statute, immune from judicial review, as held in *Texas State Com. for the Blind v. United States*, 6 Cl.Ct. 730, 737 (1984), *rev'd on other grounds*, 796 F.2d 400 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 874, 93 L.Ed.2d 828 (1987), this would not ameliorate the statute's alleged constitutional infirmities under Article II. This Court has found that the arbitration panel's decision is final and binding and, upon being subjected to limited review, to not be in error.

### 1. *Appointments Clause*

■ The USA contends that the arbitration scheme violates the Appointments Clause, Art. II, Section 2, cl. 2, by empowering arbitrators to exercise significant executive duties and responsibilities reserved for "Officers of the United States" without also providing for their appointment in a constitutionally permitted manner. Article II, Section 2, cl. 2, provides that:

he [The President] shall nominate, and by and with the Advice and consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest

the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

The USA cites authority for the proposition that in order to make the principle of separation of powers more than an abstract generalization, all officers of the United States are to be appointed in accordance with the Appointments Clause; no class or type of officer is excluded because of its special function. *See, e.g., Buckley v. Valeo,* 424 U.S. 1, 125–32, 96 S.Ct. 612, 685–88, 46 L.Ed.2d 659 (1976) *United States v. Germaine,* 99 U.S. 508, 509–10, 25 L.Ed. 482 (1879). The USA submits that arbitrators under the Randolph–Sheppard Act clearly perform the functions of "officers" of the United States, but the method by which they are selected under Section 107d–2(a), by the parties to a Randolph–Sheppard Act dispute, is not a constitutionally approved method set forth in the Appointments Clause; specifically, NASA contends that the Randolph–Sheppard arbitration scheme vests arbitrators of disputes between federal entities and SLAs with plenary power and independent authority to issue decisions binding not only the parties to the dispute, but also the Secretary of Education and the President. Such expansive executive authority can only be afforded Officers of the United States appointed in accordance with the Appointments Clause. As such, the USA contends the Act's arbitration scheme is unconstitutional.[9] The USA cites *Buckley* as rendering such schemes impermissible. The USA further submits that such arbitration panels in issue exert extensive authority over Act related disputes as they hear evidence, interpret the Act and its implementing regulations, render factual and legal rulings, and make nominally "final and binding" determinations on behalf of the Executive Branch; the Act purports to empower arbitration panels with plenary authority to adjudicate Act-related disputes and make

ultimate policy determinations for the executive department which is charged with administrative authority over the Act. The USA contends that the responsibilities and functions of Randolph–Sheppard arbitrators "plainly entail [ ] execution of the law in constitutional terms," since these arbitrators interpret and apply relevant statutory and regulatory requirements, legal precedents, and policy directives and "[i]nterpret [ ] a law enacted by Congress to implement the legislative mandate...." *Bowsher v. Synar,* 478 U.S. 714, 733, 106 S.Ct. 3181, 3191, 92 L.Ed.2d 583 (1986); *see also Buckley,* 424 U.S. at 140–41, 96 S.Ct. at 692 (executive duties include "perform[ing] ... a significant governmental duty exercised pursuant to public law").

MVRB contends that by definitions found in the Appointments Clause, the members of the arbitration panel may be characterized as "lessor functionaries" in a temporary capacity which are not subject to the Appointments Clause; in the alternative, MVRB submits that if the *ad hoc* panel is an "office," it is clear that the arbitration panel members are "inferior" officers, temporary in duration, and, that Congress "may by law" vest the appointment process in the "Heads[s] of Department" which in this case is the Secretary of Education; as such, the MVRB submits there is no Appointments Clause violation. *Citing Freytag v. Commissioner,* —— U.S. ——, ——, 111 S.Ct. 2631, 2640, 115 L.Ed.2d 764, 781 (1991); *Morrison v. Olson,* 487 U.S. 654, 670–71, 108 S.Ct. 2597, 2608–09, 101 L.Ed.2d 569 (1988).

MVRB likens the panel to a court Special Master, which is indicated as a "lesser functionary" and not subject to the Appointments Clause; its existence is of an *ad hoc,* temporary, and episodic basis, limited to the adjudication of a particular dispute. *See Freytag,* 111 S.Ct. at 2640. However, as in *Freytag,* the arbitration panel's decision is much more significant and final and its determinations are more

---

**9.** Because arbitration panels convened under the Act are appointed by none of the constitutionally-accepted federal entities, it matters not, for purposes of this motion, whether these panels are properly considered "principal" or "infe-

rior" Officers. Their method of appointment by the parties to an Act-related dispute .fails to satisfy the respective appointment processes set forth in the Appointments Clause for either type of Officer.

akin to those of a special trial judge who is defined as an "inferior officer." *Id.* at 2640. MVRB submits that pursuant to the Appointments Clause such inferior officers may be appointed by "Heads of Departments" and others.

Further, MVRB submits that for Appointment Clause purposes, the "Head of Department" who may permissibly effect the appointment of "inferior" officers refers to the head of a recognized division of the government which is expressly created and given the name "department" by Congress and which is of high status. *Freytag*, —— U.S. at ——, 111 S.Ct. at 2642–2644, 115 L.Ed.2d at 784–785. In the instant case, the Department of Education is clearly such a recognized department, being one of the 14 listed departments which constitute the "executive departments" of the United States. 5 U.S.C. Section 101. The Secretary of Education is the "Head" of the Department. 20 U.S.C. Section 3411. Under any view of the Appointments Clause, the Secretary of Education is a "Head of Department" that may, pursuant to an Act of Congress, effect the appointment of an inferior officer. *See Freytag*, 111 S.Ct. at 2642; *Id.* at 2646 (Scalia, J., concurring); —— U.S. at ——, 111 S.Ct. at 2642–2644, 115 L.Ed.2d at 784–785; *Id.* —— U.S. at ——, 111 S.Ct. at 2657–2660, at 803–805.

The Court is in agreement with MVRB that in the instant case Congress has by statute provided for the appointment power to be exercised by the Secretary of Education, who convenes the *ad hoc* arbitration panel and appoints its members pursuant to the process set by statute and executive regulation of the Department of Education. 20 U.S.C. Section 107d–2(b)(2); 34 C.F.R. Section 395.37. Accordingly, the Court does not find there is an Appointments Clause violation based upon this assertion by the USA.

### 2. *Separation of Powers*

MVRB also submits that there is no violation of separation of powers as a result of the actions of the Randolph–Sheppard arbitrational panel and such a panel does not interfere with executive functions. Rather, MVRB submits that the arbitration panel convened pursuant to the Act does not exercise any core "Executive" function, but instead is limited solely to narrow and independent adjudicatory functions independent from the immediate and direct coercion of any governmental official with regard to its initial arbitration decision.

MVRB submits that in this regard, Congress clearly has the constitutional authority to establish special tribunals and to assign adjudicatory tasks to such tribunals, which may be associated with the executive, legislative, or judicial branch. (Citing *Ex parte Bakelite Corp.*, 279 U.S. 438, 451–52, 49 S.Ct. 411, 413–14, 73 L.Ed. 789, 794 (1929)). As noted in *Bakelite*, "conspicuous among such matters are claims against the United States," and providing a method for independently determining Randolph–Sheppard claims against federal agencies by arbitration tribunal clearly falls within Congressional power. As stated in *Bakelite*:

> Legislative courts also may be created as special tribunals to examine and determine various matters, arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it. The mode of determining matters of this class is completely within congressional control. Congress may reserve to itself the power to decide, may delegate that power to executive officers, or may commit it to judicial tribunals. Conspicuous among such matters are claims against the United States. These may arise in many ways and may be for money, lands or other things.

279 U.S. at 451–52, 49 S.Ct. at 413, 73 L.Ed. at 794.

MVRB concludes that the powers exercised by the panel are adjudicatory, not purely executive in nature, and that under these circumstances, the separation of powers is not implicated in an impermissible manner. *See Morrison v. Olson*, 487 U.S. 654, 685–689, 108 S.Ct. 2597, 2616–2618, 101 L.Ed.2d 569 (1988); *Wiener v. United States*, 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958) (Congress could create

a commission free from presidential control to adjudicate war claims); *Humphrey's Executor v. United States*, 295 U.S. 602, 626–632, 55 S.Ct. 869, 873–75, 79 L.Ed. 1611 (1935) (Congress has authority to create adjudicatory agencies which may act independently without possibility of executive coercion). The arbitration provisions of the Randolph–Sheppard Act do not "impermissibly undermine" any legitimate power of the Executive Branch. (Citing *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), as plainly inapposite). *See Morrison*, 487 U.S. at 693–695, 108 S.Ct. at 2620–21 (powers delegated by statute are not functions which Constitution requires to be performed by officials within Executive Branch).

The USA rebuts MVRB's contentions and submits that the panel's arbitrators exercise significant and ultimate authority which is not merely advisory or factually determining. The USA and NASA contend that the panel's power is unlike that power exercised by a special master. Rather, the USA and NASA submits that the decisions of a panel such as the one in issue are final and binding; said decisions are alleged to be exempt from agency objection and insulated from executive branch oversight, although said branch is charged with administering the Randolph–Sheppard program. Further, the USA and NASA submit that while the tenure of arbitration panels indeed may be temporary, such limited tenure in no way lessens the constitutionally significant duties exercised by arbitration panels under the Act; and, they submit that said panels exercise a degree of authority that is in excess of and incompatible with, the more ministerial tasks that characterize the classification of "lesser functionary" or mere employee. However, as set forth herein, the Court is of the opinion that the panel members' function are more in the nature of those of inferior officers, not those of lesser functionaries. And, as noted by NASA and the USA, the length of tenure is not necessarily determinative of status as an inferior officer subject to the Appointments Clause, and a "lesser functionary," not subject to the Appointments Clause. *Morrison v. Olson*, 487 U.S. 654,

672, 108 S.Ct. 2597, 2609, 101 L.Ed.2d 569 (1988).

NASA and USA also submit that the appointment of arbitration panel members by the parties to the Randolph–Sheppard dispute, pursuant to 20 U.S.C. Section 107d–2, does not satisfy or comply with the Appointments Clause despite MVRB's assertions.

As the Court is of the opinion that the arbitrators under the Act perform the functions of "officers," the USA and NASA contend the "officers" method of selection pursuant to 20 U.S.C. Section 107d–2(b)(2), rather than by one of the constitutionally-approved methods set forth in the Appointments Clause, renders the Act's arbitration scheme unconstitutional.

The USA further rebuts asserting that the Appointments Clause sets forth the exclusive means by which inferior officers may be constitutionally appointed—by the President alone, by the Judiciary, or by the Heads of Departments. U.S. Const., Art. 2, Section 2, cl. 2; *see also* NASA Mem. at 15–16. Further, the USA submits that the Randolph–Sheppard arbitration panel members are, however, selected by none of these three constitutionally-approved bodies. The Act clearly provides, with respect to the Act-related disputes between SLAs and federal entities, that the three-member arbitration panel consists of: (i) one member appointed by the SLA; (ii) one member appointed by the head of the federal entity with control over the disputed property; and (iii) one member (not employed of the federal entity involved in the dispute) jointly appointed by the other two panel members. 20 U.S.C. Section 107d–2(b)(2). The Act also provides that in the event that either of the parties fails to designate their respective arbitration panel member, the Act provides that the Secretary "shall designate such member on behalf of such party." 20 U.S.C. Section 107d–2(b)(2). The USA contends that this is the only circumstance under which the Secretary assists, in any fashion, in the selection of arbitration panel members. Yet, the Secretary was not required to so further designate as neither NASA nor MVRB failed to desig-

nate their chosen arbitration panel member. NASA contends that its selection of its respective panel member thus served as the only measure of federal participation in the selection of the NASA–MVRB arbitration panel.

The Court does not agree that the plain language of Section 107d–2(b)(2) makes the Secretary of Education's role with respect to the appointment of arbitration panel members in SLA-federal agency disputes non-existent. Beyond "convening" the arbitration panel, the Secretary's participation is pursued by the member appointed by the head of the federal entity with control over the disputed property; in the event that either of the parties to the dispute were unable to designate their respective panel members, the Secretary would have had to designate such member on behalf of such party. Whether or not the Secretary is required to intervene is not indicative of whether or not the Secretary has the power to exert, if necessary. His ability to participate is viable if required. As such, this Court does not find a violation of the Appointments Clause in this arbitration scheme.

The USA and NASA further respond asserting that the Act's arbitration scheme impermissibly encroaches on executive authority and violates the separation of powers principle. The USA and NASA base this assertion on the argument that the Act fails to provide any mechanism for executive branch oversight or review of the arbitration panels' decisions, including any review by the Secretary who is the official charged with administering the Randolph–Sheppard program.

The USA submits that MVRB's argument that the arbitration panels exercise "adjudicatory" not "executive" powers, and that Congress "clearly has the constitutional authority to establish special tribunals and assign adjudicatory tasks to such tribunals" misses the point. The USA submits that it is not the fact that the Act provides for adjudication of Act-related disputes by *ad hoc* arbitration panels that they submit separation of power principles are offended. Rather, separation of powers concerns

arise where, as here, such arbitration panels or other legislatively-created adjudicatory bodies purport to have ultimate (and unreviewable) authority to make binding and legal policy determinations on behalf of the executive branch. The USA does not dispute that an incident of Congress' power to create and define public rights is the authority to provide "that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right." *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 83, 102 S.Ct. 2858, 2878, 73 L.Ed.2d 598 (1982); *see also Atlas Roofing Co. v. Occupational Safety & Health Review Com.,* 430 U.S. 442, 455–58, 97 S.Ct. 1261, 1269–71, 51 L.Ed.2d 464 (1977); *Ex Parte Bakelite Corp.,* 279 U.S. 438, 449–51, 49 S.Ct. 411, 412–13, 73 L.Ed. 789 (1929).

However, the USA contends that Congress' power to create such tribunals does not lend it authority to vest said bodies with ultimate responsibility to make binding legal and policy determinations on behalf of the executive department or agency charged with administering the statutory program. The USA submits that the Act's scheme vests the arbitrators in issue with plenary and independent authority to issue decisions binding not only on the parties, but also on the executive branch.

The Court is not convinced that there is a dilution by the Act's arbitration scheme of executive responsibility or a disruption of the making of policy by responsible executive officials as the USA contends. The Secretary, who is appointed by the President does have the power to intervene if the parties to the federal agency-SLA dispute fail to designate a member to the arbitration panel.

The USA submits that when the President appoints and supervises executive officials as the constitution provides, he can be held accountable for how the laws are carried out. Thus, under the terms of the Randolph–Sheppard Act, the Secretary, and thus, the executive branch, loses the power to execute the laws or to execute control when the arbitration panel decisions are

final and binding. *See Morrison,* 487 U.S. at 695, 108 S.Ct. at 2621. However, the Court finds that the Secretary does have the authority to intervene, if necessary, and appoint arbitration panel members of his own choosing in the event either party to the dispute fails to do so. The Court does not find that the Act's arbitration scheme violates separation of power principles.

### CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion of the defendant/counterclaimant Mississippi Vocational Rehabilitation for the Blind for Summary Judgment on its counterclaim and to dismiss plaintiff's complaint, with exhibits, is hereby GRANTED as it seeks that this Court dismiss the plaintiff's complaint against it, and DENIED inasmuch as it seeks this Court to strike any exhibits.

IT IS FURTHER ORDERED AND ADJUDGED that said motion of the defendant MVRB is hereby GRANTED in part as it seeks confirmation of the arbitration panel's decision that the defendant MVRB is entitled to priority for a permit for the operation of the vending machines by its blind licensees at NASA's Hancock County property in issue, provided that a timely and appropriate bid is submitted; said motion is hereby DENIED in part as it requests this Court to compel NASA to terminate the existing concession agreement prior to its expiration in July of 1992.

IT IS FURTHER ORDERED AND ADJUDGED that the relief sought in paragraph 33(e) of MVRB's counterclaim seeking a hearing on prospective monetary relief is hereby DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that the cross-motion of the plaintiff, the United States of America, and counterdefendants Roy S. Estess, Admiral Richard H. Truly, and the National Aeronautics and Space Administration for summary judgment on the defendant MVRB's counterclaim is hereby DENIED in part as it seeks that (a) the Randolph–Sheppard Act's arbitration scheme for disputes between federal entities and state licensing agencies is unconstitutional; and GRANTED in part as it requests this Court to hold that the arbitration panel exceeded its remedial authority under Section 20 U.S.C. 107–2(b)(2) by ordering NASA to terminate an existing concession agreement in favor of a Randolph–Sheppard blind vending permit on behalf of MVRB.

IT IS FURTHER ORDERED AND ADJUDGED that a Judgment shall be entered in accordance with the foregoing Memorandum Order pursuant to Rule 58 of the Federal Rules of Civil Procedure and Rule 9 of the Uniform Local Rules of the United States District Courts for the Northern and Southern Districts of Mississippi.

SO ORDERED AND ADJUDGED.